## CLAUDIA BARTLETT *v.* JAMES R. HEISE ET AL.
### (AC 24377)

Foti, Flynn and Bishop, Js.

Argued May 3—officially released August 10, 2004

[7] See footnote 2.

*Frank J. Kolb, Jr.*, with whom, on the brief, was *Joseph A. Marotti*, for the appellant (plaintiff).

*Ellen M. Costello*, for the appellee (defendant Nupur Narain).

*Opinion*

PER CURIAM. The plaintiff, Claudia Bartlett, appeals from the judgment rendered by the trial court granting the motion for summary judgment filed by the defendant Nupur Narain.[1] The plaintiff claims that the court improperly precluded certain testimony from her expert witness and improperly rendered summary judgment. We affirm the judgment of the trial court.

In 1998, the plaintiff commenced this action, alleging that the defendant, who had rendered dental services to her between December, 1995, and September, 1997, had, among other things, negligently failed to maintain proper treatment records and had improperly installed crowns on her teeth. The plaintiff alleged that the defendant's negligence caused her permanent physical injury, economic injury and pain and suffering. The defendant denied that he had treated the plaintiff in a negligent manner.

---

[1] The plaintiff originally brought this dental malpractice action against the defendant James R. Heise as well as Narain. The plaintiff withdrew the action as to Heise, leaving Narain as the sole defendant. We refer in this opinion to Narain as the defendant.

In May, 2001, in response to the defendant's requests for disclosure of the plaintiff's expert witnesses, the plaintiff disclosed that she intended to call Donald B. Weeks, a dentist, as her expert witness.[2] The plaintiff represented that Weeks would "testify regarding his care, examination, treatment and [the] progress of his patient [the plaintiff], which occurred subsequent to an incident which occurred [i]n February, 1996." The plaintiff's disclosure also indicated that "[t]he grounds for the doctor's opinions [are] his examination of the plaintiff . . . the medical records and reports and his education, background and experience as [a] medical doctor."

The matter was assigned for arbitration and, on January 31, 2002, the arbitrator rendered a decision in favor of the defendant. The arbitrator concluded that "[t]he plaintiff [had] not placed in evidence the opinion of a qualified expert witness about the applicable standard of care, that [the defendant's] treatment of the plaintiff breached that standard of care, and that the plaintiff's injuries and losses were proximately caused by that breach of the standard of care."[3]

In February, 2002, the plaintiff filed a motion for a trial de novo in the Superior Court. On May 30, 2003, the defendant filed a motion to preclude the plaintiff from offering expert testimony as to the issues of standard of care and causation on the ground that the plaintiff had failed to disclose any expert opinion with regard to those subjects. On June 9, 2003, the court granted

[2] In an earlier disclosure dated February 16, 1999, the plaintiff represented that she intended to elicit testimony from Weeks concerning "the nature and extent of the plaintiff's injuries, including any permanent disability sustained by her."

[3] The record reflects that the plaintiff submitted to the arbitrator a report authored by Weeks concerning the plaintiff's condition. The arbitrator implicitly concluded that this letter did not contain expert opinion with regard to the applicable standard of care, a breach of the standard of care or causation of the plaintiff's claimed injuries.

the defendant's motion to preclude.[4] The court then granted the defendant's motion for summary judgment on the ground that the plaintiff had failed to produce the requisite expert testimony in support of her case.[5]

It is clear, and not disputed to any significant extent, that the plaintiff did not file an expert disclosure that comports with the clear requirements of Practice Book § 13-4 (1).[6] The plaintiff's disclosure of Weeks as an expert witness failed to afford notice to the defendant that the plaintiff intended to elicit from Weeks expert testimony concerning the requisite standard of care, any deviation therefrom by the defendant and causation. We conclude that the court did not abuse its discretion in precluding Weeks' testimony as it did. Practice Book § 13-4 (4)[7] clearly permits a court to impose such a sanction when, as here, a plaintiff has failed to disclose her expert witness properly. See *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 11, 776 A.2d 1115 (2001). Accordingly, the court's order of sanction withstands scrutiny.

---

[4] The record reflects that jury selection began on June 6, 2003.

[5] During argument before the court, counsel for the defendant stated that she "chose not to depose Weeks because he was not disclosed as to standard of care and causation. And we got his records, so we didn't need to depose a subsequent treating doctor. . . . We came in last week to start trial. If we were at trial, this would be a directed verdict, and therefore I'm asking the court to enter a summary judgment."

[6] Practice Book § 13-4 (1) (A) provides: "A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."

[7] Practice Book § 13-4 (4) provides in relevant part: "If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party . . . ."

"The standard of review for a challenge to the granting of a motion for summary judgment is well established. In deciding a motion for summary judgment, the trial court must review the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . .

"A material fact is a fact that will make a difference in the result of the case. . . . *The facts at issue are those alleged in the pleadings.* . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Vaillancourt* v. *Latifi*, 81 Conn. App. 541, 545, 840 A.2d 1209 (2004).

"Except in the unusual case where the want of care or skill is so gross that it presents an almost conclusive inference of want of care . . . the testimony of an expert witness is necessary to establish both the standard of proper professional skill or care on the part of a physician . . . and that the defendant failed to conform to that standard of care." (Citations omitted; internal quotation marks omitted.) *Campbell* v. *Palmer*, 20 Conn. App. 544, 548, 568 A.2d 1064 (1990).

The plaintiff had the burden of presenting the requisite expert evidence in support of her case. The plaintiff failed to comply with the rules of discovery, and the court's resulting sanction precluded her from producing such evidence so as to demonstrate that a genuine issue of material fact existed in this case. Accordingly, the

court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.